**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**DANIEL MINER,**

*Plaintiff,*

v.

**CLARITY SERVICES, INC.,**

*Defendant.*

Case Number: 8:26-cv-01084

**JURY TRIAL DEMANDED**

## COMPLAINT AND JURY TRIAL DEMAND

COMES NOW the Plaintiff, **Daniel Miner** ("**Mr. Miner**"), by and through his attorneys, Seraph Legal, P.A., and complains of the Defendant, **Clarity Services, Inc.** ("**Clarity**" or "**Defendant**"), stating as follows:

### PRELIMINARY STATEMENT

1.  This is an action brought by Mr. Miner against Clarity for violations of the *Fair Credit Reporting Act*, 15 U.S.C. § 1681, *et seq.* ("**FCRA**").

### JURISDICTION AND VENUE

2.  Subject matter jurisdiction arises under the FCRA, 15 U.S.C. § 1681p, and 28 U.S.C. § 1331.

3.  Clarity is subject to the provisions of the FCRA and is subject to the jurisdiction of this Court pursuant to Fed. R. Civ. P. 4(k) and § 48.193, Fla. Stat.

4.  Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391(b)(2), because the acts complained of were committed and /or caused by Clarity within Polk County, Florida, which is in the Middle District of Florida.

## PARTIES

5.  Mr. Miner is a natural person residing in the City of Winter Haven, Polk County, Florida.

6.  Mr. Miner is a *Consumer* as defined by the FCRA, 15 U.S.C. § 1681a(c).

7.  Clarity is a Delaware corporation, with a principal business address at 475 Anton Boulevard, Costa Mesa, CA 92626.

8.  Clarity is registered to conduct business in the State of Florida, where its Registered Agent is CT Corporation System, 1200 South Pine Island Rd., Plantation, FL 33324.

9.  Clarity is a nationwide *Consumer Reporting Agency* ("CRA") within the meaning of the FCRA, 15 U.S.C. § 1681a(f), in that it, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and uses various means of interstate commerce for the purpose of preparing or furnishing consumer reports, specifically including mail, internet, and/or telephone communications.

## FACTUAL ALLEGATIONS

### Clarity's Inaccurate Consumer Reports Regarding Mr. Miner

10.    Around September 2021, Clarity began maintaining a credit file on Mr. Miner.

11.    Around January 17, 2024, Clarity incorporated credit information belonging to a separate, unrelated consumer into Mr. Miner's file.

12.    Clarity falsely associated information apparently belonging to Kenneth Stanford, an unrelated individual who appears to live in Dallas, Texas, into its credit file regarding Mr. Miner.

13.    Clarity incorporated a significant amount of information likely belonging to Kenneth Stanford into its file on Mr. Miner, including:

   a) Date of birth in 1965;

   b) Home address in Dallas, Texas;

   c) Texas Driver's License Number;

   d) Telephone numbers with a 214 area code;

   e) Email addresses with "K" and "Stanford" in the address;

   f) Employment Information, including employer name obviously in Dallas;

   g) Income Information;

   h) A bank account in Dallas, TX; and,

   i) A credit inquiry from "Splash Cash / Insight."[1]

14.    Clarity's file on Mr. Miner is an almost textbook example of a *mixed file*.

---

[1] Plaintiff has summarized the information for the privacy of the unrelated information.

15.    A mixed file is a credit file that contains information concerning two or more persons, rather than the one person about whom it should relate.

16.    Clarity caters its consumer reports to subprime lenders, many of whom utilize the personal identifying information maintained by Clarity to verify the identity of a potential borrower, as the applications are submitted online.

17.    Clarity also incorporates data such as bank accounts and employment information into risk scores that it provides to certain end-users upon request.

18.    Thus, Clarity's inclusion of personal identifying information belonging to another consumer has a severe, negative effect on a consumer's ability to obtain credit.

19.    Clarity knows that its automated systems often erroneously match tradeline information to an incorrect consumer's credit file with minimal commonalities.

20.    Despite such knowledge, Clarity has declined to correct its systems, which often appear to match a consumer's data with the information in its files based on a single data point instead of utilizing all of the information provided to it.

21.    Clarity, a CRA, has a legal obligation to use reasonable procedures to assure the maximum possible accuracy of its consumer reports. 15 U.S.C. § 1581e(b).

22.    Despite its obligation, on January 17, 2024, Clarity sold a consumer report regarding Mr. Miner to Splash Cash / Insight in connection with an application for a personal loan initiated by another consumer, presumably Kenneth Stanford.

23.    Mr. Miner discovered this fact in April 2026, upon review of his Clarity consumer credit file disclosure.

24.    Upon learning that Clarity had sold his information to a company which did not ask for a report on him and did not have a legal purpose to obtain it, Mr. Miner became very concerned and emotionally distraught.

25.    Clarity also sold consumer reports to a large number of consumer lenders, including the automotive financing company Stellantis Financial Services, indicating that Mr. Miner was also known as Kenneth Stanford and that he lived in Texas.

26.    Each of these lenders, in connection with evaluating Mr. Miner's credit applications, obtained a copy of Mr. Miner's Clarity credit report containing obviously false information about Mr. Miner.

27.    As a result, Mr. Milner was frequently denied credit or offered credit on less-favorable terms.

28.    Beyond the systemic problems Clarity's automated systems routinely encounter in associating different consumers with each other, Clarity programs its systems to acquire and report as much information as possible, with little regard to the quality of the data, or if the data could even possibly be true.

29.    As a prime example, Clarity reported that Mr. Miner has *two different* Florida driver's licenses, information which clearly could not even potentially be true because it is not possible for a person to have two different Florida driver's licenses.

30.     Compounding the issue, Clarity redacted all but the last four digits of the "two" Florida driver's licenses Mr. Miner supposedly has in its credit disclosure to Mr. Miner, which was supposed to contain the full, unredacted contents of his file.

31.     Nothing in the FCRA allowed Clarity to redact this information, but it did so anyway.

32.     Another example of Clarity's incorporation of logically impossible, obviously false information is that Clarity incorporated data regarding Mr. Miner's length of residential history indicating Mr. Miner had lived at his current address for **20,200,910 months** – literally, 1.6 million years – which would mean Mr. Miner was living at his address prior to the origin of *Homo sapiens* as a species, which is not only absurd but obviously false.

33.     The fact it is even possible to report housing information from the Pleistocene Epoch establishes an abject lack of standards of any kind established by Clarity, and a lack of even basic data validation protocols within Clarity's systems.

34.     In addition to the inclusion of patently absurd data, Clarity's report on Mr. Miner's residential history is riddled with chronological contradictions. For example, the report indicates that as of January 17, 2024, Mr. Miner had a residential tenure of 123 months, or more than 10 years. Yet, in a subsequent entry dated December 13, 2024, Clarity reported Mr. Miner's tenure was 61 months. It does not stand to reason that a consumer's total length of residency could, somehow, decrease five years in less than one year.

35.    Clarity's credit file on Mr. Miner further shows a lack of data integrity standards implemented by Clarity since Mr. Miner's credit file contains several mathematically impossible pieces of information. Specifically, Clarity reported that on October 16, 2024, Mr. Miner had a residential history of 10 months. However, on April 14, 2025, only six months later, Clarity's credit file on Mr. Miner states his length of residential history was 132 months. For this to be true, Mr. Miner would have had to accrue over 10 years of residency in a span of only 180 days, information which is absurd and, on its face, obviously impossible.

36.    These overlapping and contradictory residential timelines create a facially inaccurate and frankly nonsensical residential history that violates the mandate of 15 U.S.C. § 1681e(b) to use reasonable procedures to ensure maximum possible accuracy of reports produced and creates the negative and false impression that Mr. Miner had moved residences frequently or resided at multiple residences simultaneously.

37.    Additionally, Clarity reported contradictory information regarding Mr. Miner's housing status that classified him as both a homeowner and a renter, simultaneously.

38.    Clarity reported Mr. Miner's housing status was "RENT" from January 17, 2024 to April 14, 2025, while concurrently reporting Mr. Miner's housing status was "OWN" from December 13, 2024 to March 17, 2026.  It is not logically consistent for one resident to simultaneously be a renter and an owner.

39.   Thus, Clarity's systems are programmed to include information in consumer credit files irrespective of if the data could possibly be true, despite the FCRA's mandate to utilize procedures designed to ensure maximum possible accuracy of information.

40.   Clarity's employment data also contains distortions about Mr. Miner's employment history. Specifically, on September 10, 2021, Clarity reported Mr. Miner had been with his current employer for over 20 million months, or 1.6 million years.

41.   On January 17, 2024, Clarity reported Mr. Miner had 88 months of tenure with his current employer. However, 10 months later, on November 14, 2024, Clarity reported Mr. Miner had only 12 months of tenure. Despite the passage of 10 months, the report indicates Mr. Miner inexplicably regresses 78 months.

42.   Clarity also reported that Mr. Miner's occupation was "OAKLEY TRANSPORT," which is clearly the name of an employer and not an occupation.

43.   This fact should have been known to Clarity since "OAKLEY TRANSPORT" was also reported as Mr. Miner's employer. Clarity failed to distinguish between an occupation and an employer name, further demonstrating a lack of reasonable procedures.

44.   Clarity's incorporation of inaccurate and conflicting reports of Mr. Miner's employment history fails to reflect Mr. Miner's true professional record, portrays him as having pervasive employment instability, and creates a materially misleading profile that violates the accuracy requirements of 15 U.S.C. § 1681e(b).

45.     Clarity claimed multiple different times that Mr. Miner has been paid, "BIWEEKLY," "JUST WEEKLY," "MONTHLY," and "WEEKLY," during timeframes that overlap.

46.     Furthermore, at no point was Mr. Miner paid once a month.

47.     Moreover, "JUST WEEKLY" and "WEEKLY" are clearly the same value, but Clarity lists them as if they are individual and distinct.

48.     Clarity's automated "risk score" heavily considers the number of reported changes to a consumer's pay frequency. Thus, Clarity's failure to catch the obvious – that "JUST WEEKLY" and "WEEKLY" are the same thing – created an artificially low risk score for Mr. Miner, which was sold to potential creditors.

49.     Further, as Clarity's credit scoring system heavily considers a consumer's income stability, the presence of information suggesting Mr. Miner was paid only monthly is heavily detrimental to him, since most creditors obtaining his report from Clarity require payment on a bi-weekly schedule.

50.     Clarity also incorporated data that reported on December 13, 2024, that Mr. Miner's Net Monthly Income was $0. This is not only false but also conflicts with Clarity's simultaneous reports on December 13, 2024, Mr. Miner had been with his current employer for 96 months and was paid monthly.

51.     These disclosures paint the absurd picture that despite being employed with the same employer for eight years, Mr. Miner was paid nothing on a monthly basis.

52.     Clarity's Net Monthly Income report regarding Mr. Miner contains additional irreconcilable contradictions.

53.     On November 14, 2024, Clarity incorporated data indicating Mr. Miner's monthly income was $5,960.

54.     Then on December 13, 2024, Clarity reported Mr. Miner's net monthly income was $0.

55.     However, less than a year later, Clarity reported Mr. Miner's net monthly income was $11,000.

56.     These wild fluctuations—moving from $5,960 to $0 to $11,000—indicate that Clarity is failing to verify the source of the data it publishes, even in situations where information reported is so atypical from normal that it has almost zero likelihood of being true.

57.     Clarity also incorporated inaccurate data concerning whether Mr. Miner is paid by direct deposit.

58.     On March 17, 2026 at 2:06:41pm, Clarity reported Mr. Miner *did not* receive his pay via direct deposit, which is false.

59.     Clarity should have known this since, simultaneously, on March 17, 2026 at 2:06:41pm, Clarity also reported an active bank account and routing number, suggesting Mr. Miner did, in fact, receive payment via direct deposit.

60.     The contradictory pay method and banking information was furnished by Progressive Leasing, a predatory, subprime lender which makes ultra-high-interest loans under the guise of rent-to-own agreements.

61.     The majority of lenders to whom Clarity sells reports thoroughly examine a consumer's employment history and income data to verify the consumer has a history of reliable employment and stable income to ensure the consumer is able to repay any funds the lender advances.

62.     Consequently, Clarity's inclusion of demonstrably false information about Mr. Miner's income and employment had a significant negative impact on Mr. Miner's ability to obtain new credit.

63.     Records from Clarity show it sold scores of reports regarding Mr. Miner in the past five years.

64.     Each of these reports contained false and preposterous information about Mr. Miner's employment history, housing status, income, and more.

65.     Many of these reports also contained data that belonged to an unrelated individual.

### Clarity Fails to Meaningfully Disclose Legally Required Information

66.     On or about April 1, 2026, Mr. Miner requested a copy of his consumer credit disclosure from Clarity.

67.     Upon receipt of Mr. Miner's request, Clarity was required to "clearly and accurately" disclose all information in Mr. Miner's file at the time of his request, including the identification of *each* person, including an end user if the report was obtained by a reseller, who obtains a consumer report from Clarity within the prior year *for any purpose.* See 15 U.S.C. § 1681g(a)(3)(A)(ii).

68.    "Identification" is defined in the FCRA as "the name of the person, or if applicable, the trade name (written in full) under which such person conducts business." 15 U.S.C. § 1681g(a)(3)(B)(i).

69.    Frequently, Clarity fails to fulfill its legal obligations to disclose this data, often disclosing what can be fairly called incomprehensible information which virtually no one would comprehend.

70.    For example, Clarity's disclosure shows this inquiry made on April 14, 2025:

| 4/14/2025  4:20:05 pm EDT 0ancsd5cqp | Credit Application | Online Installment Loan | Hyperspeed Loans/Infinity/Insight |

71.    In this instance, Clarity disclosed what appears to be at least three end users within this individual inquiry.

72.    However, while Hyperspeed Loans can be discovered with a quick Google search, Infinity and Insight cannot.

73.    Clarity's disclosure to Plaintiff provided him with no ability to determine who Infinity and Insight are, or why they have his confidential information.

74.     Further, the lack of accurate, full disclosure of who had obtained his credit report caused Mr. Miner great frustration and emotional distress and made him concerned he was the victim of fraud or identity theft.

75.    Clarity has been failing to provide the legally-required tradenames of persons obtaining credit reports, written in full, for at least 10 years, and often substitutes impossible-to-understand shorthand instead.

76.    Clarity thus failed to use reasonable procedures when preparing the credit reports sold to each lender.

77.    Clarity thus failed to use reasonable procedures when preparing a consumer disclosure to provide Mr. Miner upon his request.

78.    As a result of the Defendant's actions, Mr. Miner has suffered damages, including wasted time trying to figure out what the information in his Clarity file means and how it got there, lost financial opportunities, loss of credit, lower credit scores, significant emotional distress and aggravation, and damage to his reputation.

79.    Mr. Miner has hired the undersigned law firm to represent him in this matter and has assigned the firm his right to fees and costs.

## COUNT I
## CLARITY'S WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681e(b)

80.    Mr. Miner adopts and incorporates paragraphs 1 – 79 as if fully stated herein.

81.    Clarity willfully violated **15 U.S.C. § 1681e(b)** when it failed to follow reasonable procedures to assure maximum possible accuracy of the consumer reports sold regarding Mr. Miner, as reasonable procedures would not have resulted in Clarity's inclusion of information concerning another individual into Mr. Miner's reports, nor would reasonable procedures have resulted in Clarity's sale of reports containing erroneous and preposterous information about Mr. Miner's income, length of residence, employment, and more.

82. Clarity has been sued on numerous occasions for very similar conduct and knows that its procedures for ensuring accuracy of reports are flawed.

83. Clarity's conduct was thus willful or done with a reckless disregard for Mr. Miner's rights under the FCRA.

84. As a result of its conduct, Clarity is liable to Mr. Miner pursuant to the FCRA for the greater of Mr. Miner's actual damages or statutory damages of up to $1,000 for *each occurrence*, punitive damages, reasonable attorneys' fees, and costs, per 15 U.S.C. § 1681n.

**WHEREFORE**, Mr. Miner respectfully requests this Honorable Court enter judgment against Clarity for:

    a. The greater of Mr. Miner's actual damages and statutory damages of $1,000 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A);

    b. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

    c. Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and,

    d. Such other relief that this Court deems just and proper.

**COUNT II**
**CLARITY'S NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681e(b)**
**Pled in the Alternative to Count I**

85. Mr. Miner adopts and incorporates paragraphs 1 – 79 as if fully stated herein, and pleads this count strictly in the alternative to Count I.

86.    Clarity owed Mr. Miner a legal duty to utilize reasonable procedures to assure the maximum possible accuracy of its consumer reports regarding Mr. Miner.

87.    Clarity breached its duty when it sold numerous consumer reports incorporating information concerning another individual into Mr. Miner's report and which also contained erroneous and preposterous information about Mr. Miner's income, length of residence, employment, and more.

88.    Clarity's breach amounts to a negligent violation of **15 U.S.C. § 1681e(b)**, and Mr. Miner is entitled to his actual damages, attorneys' fees, and costs, pursuant to 15 U.S.C. § 1681o.

**WHEREFORE**, Mr. Miner respectfully requests this Honorable Court enter judgment against Clarity for:

a.    Actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.    Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and

c.    Such other relief that this Court deems just and proper.

### COUNT III
### CLARITY'S WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681g(a)(1)

89.    Mr. Miner adopts and incorporates Paragraphs 1 – 79 as if fully restated herein.

90.    Clarity violated 15 U.S.C. § 1681g(a)(1) when it failed to clearly and accurately disclose all the information it had in its file by providing Mr. Miner with a

redacted version of his consumer disclosure, including information which became meaningless when redacted, and which was not redacted when sold to Mr. Miner's creditors.

91.   Clarity has been notified through litigation that its disclosures to consumers fail to properly disclose this information.

92.   Clarity's conduct was thus willful and intentional, or, alternatively, was performed with reckless disregard for its duties under the FCRA to provide clear and accurate disclosures.

93.   As a result of its conduct, Clarity is liable to Mr. Miner pursuant to the FCRA for the greater of Mr. Miner's actual damages or statutory damages of up to $1,000 for *each occurrence*, punitive damages, reasonable attorneys' fees, and costs, per 15 U.S.C. § 1681n.

**WHEREFORE**, Mr. Miner respectfully requests this Honorable Court enter judgment against Clarity for:

   a.   The greater of Mr. Miner's actual damages and statutory damages of $1,000 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A);

   b.   Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

   c.   Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and,

   d.   Such other relief that this Court deems just and proper.

## COUNT IV
## CLARITY'S NEGLIGENT VIOLATIONS OF THE FCRA,
## 15 U.S.C. § 1681g(a)(1)
### Pled in the alternative to Count III

94.     Mr. Miner adopts and incorporates Paragraphs 1 – 79 as if fully restated herein and strictly pled in the alternative to Count III.

95.     Clarity owed Mr. Miner a legal duty to accurately disclose all the information in his credit file upon his request.

96.      Clarity breached this duty when it only provided Mr. Miner with a redacted version of his consumer disclosure, including information which became meaningless when redacted, and which was not redacted when sold to Mr. Miner's creditors.

97.     Clarity's breach amounts to a negligent violation of **15 U.S.C. § 1681g(a)(1)**, and Mr. Miner is entitled to his actual damages, attorneys' fees, and costs pursuant to 15 U.S.C. § 1681o.

**WHEREFORE**, Mr. Miner respectfully requests this Honorable Court enter judgment against Clarity for:

a.      Mr. Miner's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.      Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and,

c.      Such other relief that this Court deems just and proper.

## COUNT V
## CLARITY'S WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681b(a)(3)

98.   Mr. Miner adopts and incorporates paragraphs 1 - 79 as if fully stated herein.

99.   Clarity violated **15 U.S.C. § 1681b(a)(3)** when it furnished at least one report to Splash Cash / Insight about Mr. Miner in response to a request for a report on an unrelated individual with a different name, date of birth, and Social Security number.

100.   Clarity had no reason to believe it had permissible purpose to furnish this report as there are essentially no commonalities between the consumer whom Splash Cash / Insight requested reports on and Mr. Miner.

101.   Clarity knows, through complaints from other consumers, that its automated systems often provide data about unrelated consumers in response to requests for reports by lenders.

102.   Clarity is thus liable to Mr. Miner, pursuant to 15 U.S.C. § 1681n, for the greater of Mr. Miner's actual damages and statutory damages of up to $1,000 for each occurrence, as well as for punitive damages, reasonable attorneys' fees, and costs.

**WHEREFORE,** Mr. Miner respectfully requests this Honorable Court enter judgment against Clarity for:

a.   The greater of Mr. Miner's actual damages or statutory damages of $1,000 per violation, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.  Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.  Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3);

and,

d.  Such other relief that this Court deems just and proper.

**COUNT VI**
**CLARITY'S NEGLIGENT VIOLATIONS OF THE FCRA,**
**15 U.S.C. § 1681b(a)(3)**
**Pled in the Alternative to Count V**

103.  Mr. Miner adopts and incorporates paragraphs 1 - 79 as if fully stated herein and pleads this count strictly in the alternative to Count V.

104.  Clarity owed Mr. Miney a legal duty to only furnish his consumer report to end users with a permissible purpose for obtaining it.

105.  Clarity breached this duty when it responded to a request from Splash Cash / Insight to provide a report on an individual not related to Mr. Miner, by providing a consumer report regarding Mr. Miner.

106.  Clarity's breach of this duty violated **15 U.S.C. § 1681b(a)(3)**, and as such, Mr. Miner is entitled to his actual damages, reasonable attorneys' fees, and costs.

**WHEREFORE**, Mr. Miner respectfully requests this Honorable Court enter judgment against Clarity for:

a.  Mr. Miner's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.  Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2);

and,

c.  Such other relief that this Court deems just and proper.

## COUNT VII
### CLARITY'S WILLFUL VIOLATION OF the FCRA, 15 U.S.C. § 1681g(a)(3)(A)(ii)

107.   Mr. Miner incorporates, by reference, paragraphs 1 – 79 as if fully restated herein.

108.   Clarity violated **15 U.S.C. § 1681g(a)(3)(A)(ii)** when it failed to identify each person, including the end-user, when applicable, that procured Mr. Miner's consumer report during the one-year period preceding the date upon which he made the request.

109.   Clarity is aware that its consumer disclosures fail to properly identify end-users via multiple consumer lawsuits complaining of the same.

110.   Clarity's conduct was willful, intentional, and exhibited a reckless indifference to its duties to provide clear and accurate disclosures pursuant to the FCRA.

111.   Consequently, Clarity is liable to Mr. Miner for the greater of Mr. Miner actual damages or statutory damages of up to $1,000 for *each occurrence*, punitive damages, reasonable attorneys' fees, and costs, pursuant to 15 U.S.C. § 1681n.

**WHEREFORE**, Mr. Miner respectfully requests this Honorable Court enter judgment against Clarity for:

a.   The greater of Mr. Miner's actual damages or statutory damages of $1,000 *per incident* pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.   Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.   Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and,

d.   Any other relief that this Court deems just and proper under the circumstances.

## COUNT VIII
### CLARITY'S NEGLIGENT VIOLATION OF THE FCRA, 15 U.S.C. § 1681g(a)(3)(A)(ii)
### Pled in the alternative to Count VII

112.   Mr. Miner incorporates, by reference, paragraphs 1 – 79 as if fully restated herein and plead in the alternative to Count III.

113.   Clarity owed Mr. Miner a legal duty to disclose the identity of each user that obtained his consumer report within one year of Mr. Miner's request.

114.   Clarity breached this duty when it failed to identify each person, including the end-user, when applicable, who procured Mr. Miner's consumer report during the one-year period preceding the date upon which he made the request.

115.   Clarity's breach amounts to a negligent violation of 15 U.S.C. § 1681g(a)(3)(A)(ii), and Mr. Miner is entitled to actual damages, attorneys' fees, and costs pursuant to 15 U.S.C. § 1681o.

**WHEREFORE**, Mr. Miner respectfully requests this Honorable Court enter judgment against Clarity for:

a.   Mr. Miner's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.   Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and,

c.    Any other relief this Court deems just and proper under the circumstances.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on all issues so triable.

Respectfully submitted on April 15, 2026, by:

SERAPH LEGAL, P.A.

/s/ *Bryan J. Geiger*
Bryan J. Geiger, Esq.
FBN: 119168
3505 E. Frontage Rd., Suite 145
Tampa, FL 33607
P: (813) 567-1230
Bgeiger@seraphlegal.com
Service@seraphlegal.com
*Lead Counsel for Plaintiff*